**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

FILED
2007 OCT -9  AM 10: 15
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY

*In re*

**Case No.  A-06-CA-839-SS**

**DELL Derivative Litigation**

---

## O R D E R

BE IT REMEMBERED on the ___8th___ day of October 2007 the Court reviewed the file in the

above-styled cause, specifically the Motion to Dismiss for failure to make pre-suit demand filed by

the Defendants [#35], and Plaintiff's Response thereto [#39].  Having reviewed these documents,

the applicable law, and the case file as a whole, the Court GRANTS the Motion to Dismiss for the

reasons that follow.

### Background

The consolidated derivative suits, brought on behalf of nominal defendant DELL, Inc.

(DELL), assert claims under Delaware law for breach of fiduciary duty, unjust enrichment, gross

mismanagement, insider trading, and waste of corporate assets against DELL's directors and

officers.[1]  Plaintiffs allege Defendants, *inter alia*, used "cookie jar" accounting to meet DELL's

projected earnings each quarter; failed to properly disclose the company's dependence on cash

rebates from Intel Corp.; failed to properly disclose defects in DELL laptop batteries; caused DELL

to repurchase large amounts of insider stock in order to bolster stock prices and let insiders sell their

---

[1] DELL  is incorporated in the State of Delaware.

holdings at inflated prices; and concealed the existence of an informal SEC investigation for an entire year.

Defendants, before addressing the merits of these allegations, contend the suit should be dismissed because Plaintiffs have failed to make pre-suit demand as required by Federal Rule of Civil Procedure 23.1 and Delaware law. "When a shareholder of a corporation discovers acts which somehow injure the corporation, Delaware law requires that the shareholder 'demand' that the corporation's board of directors examine the injurious acts and pursue legal redress." *Sanders v. Wang*, C.A. No. 16640, 1999 Del. Ch. LEXIS 203, * 11 (Del. Ch. November 8, 1999) (citing *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984)). Federal Rule of Civil Procedure 23.1 requires a plaintiff asserting derivative claims before a federal court to plead facts regarding pre-suit demand with particularity. Under Delaware law, the demand requirement is a "substantive right designed to give a corporation the opportunity to rectify an alleged wrong without litigation, and to control any litigation which does arise." *Aronson*, 473 A.2d at 812. Failure to make proper demand is grounds for dismissal. *Id.*

Plaintiffs never made a pre-suit demand. They allege, instead, that demand is excused as futile under Delaware law because DELL's board would have been incapable of evaluating presuit demand in a disinterested and independent manner. *Aronson*, 473 A.2d at 809. *See also Brehm v. Eisner*, 746 A.2d 244 at 254-55;. Plaintiffs assert a majority of the board faces a substantial likelihood of liability for their participation in alleged insider trading and accounting fraud, or for their failure to properly investigate problems with DELL's laptop batteries.

**Analysis**

## I. Standard of Review

Defendants' motion should be evaluated as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Marron v. Ream*, No. H-06-1394, 2006 U.S. Dist. LEXIS 72831, *3 (S.D. Tex. May 5, 2006); *see also In re Coca-Cola Enters.*, 478 F. Supp. 2d 1369, 1373 (N.D. Ga. 2007). In essence, Defendants assert Plaintiff's Verified Consolidated Complaint states no legally cognizable claim because of Plaintiffs' failure to satisfy the statutory prerequisites and pleading requirements for a shareholder's derivative suit. *Marron*, 2006 U.S. Dist. LEXIS 72831 at *3.

A motion to dismiss should not be granted "unless it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and must draw all reasonable factual inferences in Plaintiff's favor. *See Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Under Delaware law and Federal Rule of Civil Procedure 23.1, allegations regarding demand futility must be plead "with particularity." FED. R. CIV. P. 23.1; *see also, e.g., Aronson v. Lewis*, 473 A.2d 805, 807 (Del. 1984). While the district court generally may not go outside the complaint in addressing a motion to dismiss, it may consider documents attached to the complaint, as well as documents that are referenced in and central to the complaint. *See Kennedy v.*

*Chase Manhattan Bank USA*, NA, 369 F.3d 833, 839 (5th Cir. 2004); *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

## II. Demand Futility

Under Delaware law, pre-suit demand is excused if the well-pleaded complaint establishes such a demand would have been futile. *Aronson v. Lewis*, 473 A.2d 805, 807 (Del. 1984). Demand is futile if there is reason to doubt that: (i) a majority of the corporation's directors are independent or disinterested; or (ii) the challenged acts were a valid exercise of business judgment. *Id.* at 812. Where the complaint does not challenge a specific action or decision of the board, demand is excused if the complaint raises a reasonable doubt that a majority of the directors are disinterested or independent at the time the complaint is filed. *Rales v. Blasband*, 634 A.2d 927, 930 (Del. 1993). The parties agree the *Rales* test provides the proper analysis in this case. *See, e.g. Guttman v. Jen-Hsun Huang*, 823 A.2d 492, 499 (Del. Ch. 2003) (applying *Rales* test to allegations of demand futility in the context of derivative suit alleging insider trading and accounting misstatements); *Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) (same).

To establish that a majority of the board was unable to properly consider pre-suit demand, "a plaintiff must allege facts as to the interest and lack of independence of the individual members of that board.'" *Guitierrez v. Logan*, No. Civ. A. H-02-1812, 2005 WL 2121554, at *7 (S.D. Tex. Aug. 31, 2005) (quoting *Orman v. Cullman*, 794 A.2d 5, 22 (Del. Ch. 2002)). Directors are considered "interested" for purposes of determining demand futility when they "appear on both sides of a transaction [or] expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally." *Aronson*, 473 A.2d at 812. A disabling interest also exists when "a corporate decision

will have a materially detrimental impact on a director, but not on the corporation and the stockholders." *Rales*, 634 A.2d at 936. A director lacks independence if his or her business judgment is controlled by another person or entity. *Aronson*, 473 A.2d at 816. To establish a director lacks independence, a plaintiff "must allege particularized facts manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling.' The shorthand shibboleth of 'dominated and controlled directors' is insufficient." *Id.* (quoting *Kaplan v. Centex Corp.*, Del. Ch., 284 A.2d 119, 123 (1971)).

The Board of Directors during the "Relevant Period" identified by the Plaintiffs ("February 13, 2003 to present" Cons. Compl. ¶ 1) consisted of 12 members: Michael Dell; Kevin Rollins; Donald Carty; William Gray, III; Judy Lewent; Klaus Luft; Samuel Nunn, Jr.; Michael Miles; Alex Mandl; Thomas Luce, III; Sallie Krawcheck; and Alan Lafley. Plaintiffs assert a majority of these directors were either impermissibly interested in the facts underlying the lawsuit or lacked independence from interested parties.

## A. Insider Trading

Plaintiffs allege Defendants Dell, Rollins, Carty, and Miles are "interested" for purposes of establishing demand futility because each Defendant engaged in improper insider trading of DELL stock during the Relevant Period. According to Plaintiffs, Defendants' challenged stock sales were part of a "pump-and-dump" scheme: Defendants knew DELL's growth (and therefore, the value of DELL's stock) was declining, but Defendants caused the market price of the stock to remain artificially inflated by (a) causing DELL to issue misleading financial statements and press reports touting DELL's "perpetual growth story," and (b) causing DELL to engage in "one of the largest stock buybacks in U.S. corporate history," Resp. at 13 n.16, during which Defendants allegedly

"dumped" a collective total of 89 million shares of DELL stock, amassing some 3 billion dollars over a 2 year period. Resp. at 12.

Allegations of insider trading are not uncommon in shareholder derivative litigation, and the Delaware courts have flatly refused to "formulate a common law rule that makes a director 'interested' whenever a derivative plaintiff cursorily alleges that he made sales of company stock in the market at a time when he possessed material, non-public information." *Guttman v. Jen-Hsun Huang*, 823 A.2d 492, 502 (Del. Ch. 2003). Instead, as with any other allegation that a director is interested because he is implicated in the suit, Plaintiffs must plead particularized facts establishing a "substantial likelihood of liability." *Id.* at 503. In other words, Plaintiffs must establish "that each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information." *Id.* at 502.

In support of their allegations, Plaintiffs assert each Defendant sold off a substantial percentage of his holdings between February of 2003 and September of 2005. Consol. Comp. at ¶ 207. In particular, Plaintiffs assert Dell sold 85 million shares, or 26.6 % of his holdings, for $2.8 billion during the "relevant period," [2] in contrast to sales of 10 million shares for $289 million in the seventeen months prior to the "relevant period." Consol. Compl. ¶ 210–11. Rollins allegedly sold 2,163,000 shares, or 99.3% of his holdings, for $74,192,846 during the "relevant period," in contrast with no sales during the 17 months prior. Consol. Compl. ¶ 212–13. According to Plaintiffs, Carty sold 564,150 shares, or 72.8% of holdings, for $20,128,490 during the "relevant period," and sold

---

[2] Plaintiffs have established a "relevant period" of February 2003 to September 2005 with regard to the alleged insider trading. Consol. Compl. ¶ 207. The "Relevant Period" identified for purposes of the derivative Consolidated Complaint as a whole, however, extends from February 2003 to the present. Consol. Comp. ¶ 1.

no shares in the 17 months prior. Consol. Compl. ¶ 212–13. Finally, Plaintiffs assert Miles sold 1.4 million shares, or 72.8 % of holdings, for $51.3 million during the "relevant period," in contrast to sales of 4400 shares for $118,000 in the 17 months prior.

Plaintiffs explain the sales are suspicious because they are "demonstrably inconsistent with each of [Defendants'] respective prior trading histories." Resp. at 12. This argument is significantly undercut, however, by the fact that neither the Consolidated Complaint nor Plaintiffs' Response to the Motion to Dismiss explains how Plaintiffs selected trading periods for comparison. Plaintiffs allege the "relevant period" coincides with "one of the largest stock buybacks in U.S. corporate history," Resp. at 13 n.16, but the buyback program at issue was instituted in 1996 and the challenged increase in this buyback program was authorized in March of 2005. Consol. Compl. ¶ 224, 232. The "relevant period" begins in February of 2003, a date not tied in any way to the inception of the stock repurchase program or its increase. Furthermore, Plaintiffs give no explanation whatsoever for selecting a "prior trading history" limited to only 17 months before the start of the 24 month "relevant period." Why not compare apples to apples by looking at the prior 24 month period?

Plaintiffs assert Defendants' sales are inherently suspicious because of their "sheer size." Resp. at 12. Plaintiffs rely on *Zimmerman v. Braddock*, No. Civ.A. 18473-NC, 2005 WL 2266566 (Del. Ch. May 9, 2005) (overruled on other grounds, *Braddock v. Zimmerman*, 906 A.2d 776 (Del.Supr. 2006)), for the proposition that the high dollar amount of Defendants' trading is inherently suspicious. *Zimmerman*, however, held demand was excused based on the "sheer size of the trades . . . *combined with the Plaintiffs's well-pleaded allegations of insider trading culpability.*" *Id.* at *8 (emphasis added). In other words, *Zimmerman* does not hold that a director's sale of stock

is inherently "suspicious" if it results in a large monetary gain; *Zimmerman* merely stands for the unremarkable proposition that demand is excused on facts that establish a "substantial likelihood of liability." *See Guttman*, 823 A.2d at 502.

Furthermore, Plaintiffs' allegations that the sales make up a large percentage of each Defendant's personal holdings are flawed. Defendants point out Plaintiffs included sales of vested stock options in calculating the challenged sales, but did not include vested options in their calculation of each Director's holdings. If vested stock options are considered as part of each Defendant's DELL holdings, the percentage of shares sold drops dramatically for each defendant: Dell sold 25%, not 26.6%; Rollins sold 17%, not 99.3%; Carty sold 40%, not 72.8%; and Miles sold 63%, not 72.8%. In any event, "the mere fact that . . . the directors sold large portions of their stock does not . . . support the conclusion that those . . . directors face a real threat of liability." *Guttman*, 823 A.2d 492 (Del. Ch. 2003).

To establish demand futility on the basis of insider trading liability, Plaintiffs cannot rely on the mere fact that Defendants liquidated some part of their holdings, even a large part; Plaintiffs must point out some "fact pleading that supports a rational inference that any of these directors had some basis to believe that [DELL's] financial statements were materially misleading in a manner that inflated the company's stock price." *Id.* To that end, Plaintiffs assert the timing of Defendants' sales is "suspicious" because the sales allegedly coincided with the Board's authorization of an increased buyback of DELL stock, and they allegedly ceased immediately following the SEC's initiation of an informal investigation into DELL's accounting practices. However, the specific facts plead by the Plaintiffs do not support these allegations.

Plaintiffs assert Defendants "dumped" their stock at the same time they authorized an increase in DELL's Stock Repurchase Plan. The challenged increase was authorized on March 3, 2005. Consol. Am. Compl. ¶ 232. However, neither Dell nor Rollins sold any stock in 2005. Compl. ¶¶ 210, 212. Carty sold 180,150 shares in 2005, but sold far more shares before the amendment to the Repurchase Plan— he sold 384,000 shares in 2004. Compl. ¶ 220. Only Miles sold more shares in 2005, after the Amendment, than before: he sold 768,000 shares in 2005, 360,000 shares in 2004, and 300,000 shares in 2003. Compl. ¶222. Miles' increased sales in 2005, however, are not inherently "suspicious." For one thing, "the complaint fails to address whether the director[] traded because options were expiring" or other restrictions on liquidity dictated the timing of the trades. *Guttman*, 823 A.2d at 504.

Likewise, there is no obvious relationship between the timing of each Defendant's last challenged sale and the initiation of the SEC's investigation. According to Plaintiffs, the SEC investigation began "by August 2005" Compl. ¶ 76 (no specific date alleged), and Defendant's stock sales ceased "almost immediately following the commencement of the SEC investigation." Resp. 13–14. However, the specific dates provided by the Consolidated Complaint establish that Dell's last challenged sale took place on November 18, 2004 (¶ 210), almost a year before the investigation began. Rollins' last sale was December 9, 2004 (¶212), nine months earlier. Carty's last challenged sale was August 22, 2005 (¶ 220), and Miles' last challenged sale was August 17, 2005 (¶ 222), in the same month the SEC investigation allegedly began, but both Miles and Carty's "pre-relevant period" sales took place in the month of August, as well. (*Id.*) Plaintiffs have simply not provided enough information to establish the timing of the sales is "suspicious." *See Guttman*, 823 A.2d at 504.

Nor have Plaintiffs provided any other "particularized facts" to establish Defendants were trading on material nonpublic information. *Guttman* suggests Plaintiffs must provide "well-pled, particularized allegations of fact detailing the precise roles that these directors played at the company, the information that would have come to their attention in those roles, and any indication as to why they would have perceived the accounting irregularities." *Id.* Plaintiffs point out that Dell and Rollins served as DELL's CEO for portions of the "Relevant Period," Miles was a director, and Carty was a member of DELL's Audit Committee. Plaintiffs assert "In light of their . . . positions within the Company, [Defendants] were all directly involved in the Company's financial reporting process." Resp. 14, n.17 (citing Consol. Compl. ¶¶ 41–43, 67, 129, 139, 154, 159–163.) Plaintiffs allege:

> [A]s a result of their access to and review of internal corporate documents, conversations and connections with other corporate officers, employees, and directors, and attendance at management and Board meetings, Defendants . . . were in possession of adverse, material, non-public information including, inter alia, problems with the Company's internal controls, accounting practices, and revenue recognition practices, and the fact that Defendants engaged in a scheme to artificially inflate the value of DELL stock by disseminating false and misleading statements in an attempt to maintain . . . the public perception that DELL was a growth company even though the Company's growth had inevitably slowed.

Compl. ¶ 246(b).

The Delaware Chancery Court specifically rejected similar allegations as insufficient to satisfy the requirement of particularized facts in the Rule 23.1 context in *Rattner v. Bidzos*, No. Civ. A. 19700, 2003 Del. Ch. LEXIS 103, * 35 n.53 (Del. Ch. Oct. 7, 2003):

> Rattner's best effort toward alleging with particularity the Director Defendants' knowledge, and how they acquired such knowledge, is set forth in Paragraph 33 of the Amended Complaint: 33.

> Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors['] meetings and committees thereof and via reports and other information provided to them in connection therewith.
>
> Although Rattner may have sought to satisfy the requirement to plead facts with particularity, Paragraph 33 of the Amended Complaint charges directors, solely upon the basis of their status as directors, with knowledge of alleged corporate activity.

*Id.* As in *Rattner*, Plaintiffs' allegations in this case boil down to accusations that Defendants are liable by virtue of their positions in the company. However, it is well-settled that a director is not "interested" for Rule 23.1 purposes simply by virtue of sitting on the board, or even because he sat on an audit committee at a time when the company filed challenged financial statements. *See, e.g. Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007); *In re Coca-Cola Enters.*, 478 F. Supp. 2d 1369, 1379 (N.D. Ga. 2007); *In re Cray Inc. Derivative Litig.*, 431 F. Supp. 2d 1114, 1128 (W.D. Wash. 2006); *Irwin v. Gemunder*, No. 2006-62 (WOB), 2006 U.S. Dist. LEXIS 84469, *14–15 (E.D. Ky. Nov. 20, 2006); *Guitierrez v. Logan*, H-02-1812, 2005 WL 2121554, *9 (S.D. Tex. Aug. 31, 2005). Plaintiffs' allegations fail to point out particularized facts suggesting the director defendants had "insider" knowledge when they sold shares of DELL stock.

Plaintiffs have additionally alleged Dell and Rollins, during their respective terms as CEO, received "constant reports regarding sales, demand, product quality, and customer service and

support issues," and were "intimately involved" in the challenged deal with Intel, the challenged

SEC filings and the Annual Reports.  Consol. Compl ¶¶ 210, 212. Even assuming these broad

allegations support an inference that Dell and Rollins traded on actual knowledge that DELL's

accounting practices were misleading, Delaware courts "reject [the] contention that knowledge on

the part of any one board member can be imputed to other board members as a result of their shared

board or committee service." *Desimone*, 924 A.2d at 943. In other words, even assuming *arguendo*

that Dell and Rollins are interested directors because they face a substantial likelihood of liability

for insider trading, there is no indication on the facts plead that Carty or Miles face any similar threat

of liability. *Id.*

**B. Audit Committee**

Plaintiff's allegations that the Audit Committee as a whole (Defendants Carty, Gray, Nunn,

and Luce) are interested because they face a susbstantial likelihood of liability for DELL's

misleading financial statements must fail for the same reason the insider trading allegations against

Carty and Miles fail to establish a disabling interest.  Essentially, Plaintiffs' "particularized factual

allegations" boil down to the assertion that the members of the Audit Committee knew about the

accounting misstatements by virtue of their positions on the Audit Committee. *See* Consol. Compl.

¶¶ 67–68.  In support of their allegations, Defendants have quoted the DELL Audit Committee

Charter, which charges the Audit Committee with "overseeing," "reviewing," and "discussing"

financial information with management and independent auditors.

Simply asserting that the Audit Committee was "responsible for monitoring the quality and

integrity of the [c]ompany's financial reporting process and systems of internal controls regarding

finance, accounting and legal compliance, as well as monitoring compliance with legal and

regulatory requirements" at the time allegedly misleading financial statements were filed, *Guitierrez*, 2005 WL 2121554, *9, is "insufficient to raise an inference that [the audit committee] face[s] a substantial likelihood of liability for breach of fiduciary duty." *Id.* Likewise, the mere fact that Audit Committee members signed the challenged financial statements as part of their general duties is not sufficient to establish a substantial likelihood of liability. *Id.*

To establish a disabling interest based on a substantial likelihood of liability for failed oversight, Plaintiffs must identify what, if anything, in the course of these reviews or discussions should have been a "red flag" to the Audit Committee triggering a duty to further investigate. *Stone v. Ritter*, 911 A.2d 362, 373 (Del. 2006); *see also In re Coca-Cola Enters.*, 478 F. Supp. 2d at 1379 ("Just as in a general failure of oversight claim, the Plaintiff must provide particularized allegations showing the information that the Audit Committee saw and upon which it failed to act.")(citing *Rattner*, 2003 Del. Ch. LEXIS 103 at *13). Plaintiffs attempt to satisfy this requirement by setting out a chart showing that DELL's quarterly earnings from May 2, 2003 through April 29, 2005 consistently "just match[ed] the guidance [DELL] previously provided to the market" each quarter. Plaintiffs do not explain why successful earnings projections, in and of themselves, should give the Audit Committee "constructive notice" of any deficiencies in the accounting practices approved by DELL's independent auditors. Therefore, Plaintiffs have failed to establish demand is excused with regard to the members of the Audit Committee on the basis of the Audit Committee's failure to prevent accounting misstatements.

In the alternative, Plaintiffs allege the Audit Committee "and indeed, the entire Board" faces a substantial likelihood of liability for "their systemic failure to take any action with respect to the laptop battery issue." Consol. Compl. ¶ 246(d). However, Plaintiffs' specific factual allegations

establish the following: DELL knew about manufacturing problems with Sony batteries sometime in 2005, but "held off on issuing a recall until those flaws were clearly linked to catastrophic failures causing those batteries to catch fire." Consol. Compl. ¶ 184. In October of 2005, DELL's outside legal counsel corresponded with the Consumer Product Safety Commission about overheating batteries. *Id* at ¶ 186. Dell recalled 22,000 of the laptops affected in December of 2005 and 4.1 million more affected laptops in August of 2006. *Id.* Plaintiffs assert reports of customer complaints regarding battery combustion had been submitted monthly to DELL executives, allegedly for more than two years prior to DELL's battery recalls, but do not explain what responsibility, if any, the Board of Directors had to review these monthly consumer complaint reports. *Id.* ¶ 179.

In short, the particularized facts alleged by Plaintiffs do not support their general allegation that the Board ignored "countless opportunities to act on numerous 'red flags' . . . in connection with the risk of battery combustion in DELL laptop computers." *Id.* at ¶246(d). First, the Consolidated Complaint only identifies actions by "DELL," giving no indication whatsoever of the Board's specific role, if any, in investigating the extent of the problem and recalling the affected computers. In any event, even imputing "DELL's" actions to the Board rather than to management, "[P]laintiffs' allegations do not approach the level of corporate irresponsibility defined by the Delaware Supreme Court in *Stone*." *In re Fannie Mae Sec.*, No. 04-1783 (RJL), 2007 U.S. Dist. LEXIS 39348, *29–30 (D.D.C. 2007) (citing *Stone v. Ritter*, 911 A.2d at 373). Instead, the facts alleged suggest DELL investigated the scope of the battery problem and explored its legal obligations before issuing not one, but two extensive recalls. Given the high cost (both in cash and reputational capital) of a recall, the Board's decisions to limit the scope of the recall and even to limit pre-recall publicity are more than likely protected by the business judgment rule, *Aronson*, 473 A.2d at 815. Moreover, the

directors are certainly exculpated from any personal liability for errors in their business judgment under DELL's Restated Certificate of Incorporation, which shields the directors from liability for negligence or gross negligence. *See* Del. Code tit. 8, § 102(b)(7); *Stone*, 911 A.2d. at 367, 369. Therefore, Plaintiffs have not established demand is excused with regard to any of the directors based on failed oversight of the battery problem.

## D. Employee Directors

Plaintiffs assert the employee directors, Dell, Rollins, and Carty, are not independent for purposes of considering pre-suit demand by virtue of their employment relationship with DELL. Consol. Compl ¶ 246(f), (g), (j). However, demand futility cannot be pled "based solely on [directors'] employment positions … and the compensation that they received for performing the duties of those positions." *Guitierrez*, 2005 WL 2121554, at *11. If these allegations were sufficient to show lack of independence, "every inside director would be disabled from considering a pre-suit demand." *Sagent*, 278 F. Supp. 2d at 1089.

Plaintiffs assert Defendants have "conceded" the employee directors' lack of independence because DELL's webside lists them as "non-independent directors." Consol. Compl. ¶ 246(a). Plaintiffs confuse "independence" in the context of distinguishing "inside directors" from "outside directors," see *Sagent,* 278 F.Supp. 2d at 1089, with "independence" in the context of evaluating demand futility. In order to establish that a non-interested director lacks independence, a plaintiff must rebut the presumption that directors are "faithful to their fiduciary duties" by "alleg[ing] particularized facts creating a reasonable doubt of a director's independence." *Beam*, 845 A.2d at 1048-49. As discussed above, the mere fact that a director is an "insider" is not sufficient to meet this standard.

Plaintiffs assert Rollins, in addition to being a DELL employee, lacks independence because he has agreed, as part of a lucrative January 31, 2007 Separation Agreement, not to sue DELL or its Directors on his own behalf and not to encourage or become a party to any litiagation against DELL or its directors instituted by another party. Compl. ¶ 246(g), (h), Mot. Dism. Ex. 19. Plaintiffs assert this agreement prevents Rollins *and* the released Directors from asserting claims on Dell's behalf. Defendants argue the separation agreement cannot affect the demand futility analysis because it was not signed until after the consolidated derivative suits were filed. The separation agreement was signed February 13, 2007 and Rollins remained employed until May 4, 2007. The Consolidated Complaint, filed May 14, 2007, relates back to the initial Complaints filed on October 16, 2006 and January 22, 2007, respectively, and defendants argue demand futility must therefore be determined as of January 22, 2007 at the latest.

This technical point is moot, however, because the wording of the Separation Agreement does not support Plaintiffs' construction; in particular, Rollins "agrees that he will give DELL his full cooperation in connection with any claims, lawsuits, or proceedings that relate in any manner to Mr. Rollins' conduct or duties at DELL or that are based on facts about which Mr. Rollins obtained personal knowledge while employed at DELL." Mot. Dism. Ex. 19. Though there is a mutual "non-disparagement" clause in the agreement, there is no language in the agreement suggesting DELL releases any potential claims against Rollins. *Id.* Accordingly, the plain wording of the agreement does not limit Rollins' or the other board members' ability to consider pre-suit demand on behalf of DELL.

**E.  Director Relationships**

Plaintiffs' remaining allegations that individual directors lack independence are based solely on business relationships, personal friendships, and overlapping board memberships among the directors.  However, "to render a director unable to consider a demand, a relationship must be of a bias-producing nature. Allegations of a mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence." *Beam*, 845 A.2d at 1050. Thus, Plaintiffs' allegations that the directors worked together at other companies fall far short of plaintiffs' burden of  "alleg[ing] particularized facts creating a reasonable doubt of a director's independence." *Id.* at 1049.

To the extent Plaintiffs allege any director is biased because of contracts between DELL and other companies with which the director is affiliated, "the existence of contractual relationships with companies that directors are affiliated with potentially makes the board's decision more difficult, but it does not sterilize the board's ability to decide." *Jacobs v. Yang*, No. Civ. A. 206-N, 2004 WL 1728521, at *6 (Del. Ch. Aug. 2, 2004). Moreover, for all of the alleged business deals, Plaintiffs' allegations have crucial deficiencies. They fail to allege with particularity that "the revenue from [the deal] is material to either [the company] or to [the director] because of his relationship with [the company]." *Khanna v. McMinn*, No. Civ. A. 20545-NC, 2006 WL 1388744, at *17 (Del. Ch. May 9, 2006); *see also Brehm*, 746 A.2d 244. In addition, Plaintiffs fail to allege that the DELL director's responsibilities with the other company "include managing the firm's relationship with" DELL. *Khanna*, 2006 WL 1388744, at *17; *see also Yang*, 2004 WL 1728521, at *6 ("merely asserting that the agreements were entered into at [the director's] behest without factual support is insufficient to meet the particularity requirements of Rule 23.1"). Also, Plaintiffs "do[ ] not allege sufficient facts

to support the inference that [the defendants] have the authority or ability to cause Dell to terminate

its relationships with the companies with which [the other directors] are affiliated." *Yang*, 2004 WL

1728521, at *6. Because Plaintiffs do not state how Dell's business relationships could, or did, affect

the directors' decision-making process, the Complaint does not establish that any of the directors lack

independence.

### Conclusion

Plaintiffs have not plead particularized facts sufficient to establish demand futility with

regard to a majority of DELL's board of directors.

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss [#35] is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Consolidated Complaint is DISMISSED

without prejudice for lack of pre-suit demand.

IT IS FINALLY ORDERED that all other motions pending in the above-styled consolidated

cases are DISMISSED as MOOT.

SIGNED this the __8th__ day of October 2007.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

-18-